AMRIT B. AND SANJIVANI C. BAKARE, EINER G. AND VIRGINIA M. BERLIN, WALLACE A. CALL, JEFFREY D. AND DEBORA J. DANIELS, GEORGE AND DOROTHY J. DROTAR, ARTHUR J. AND BARBARA GLICK, ALBERT R. AND ILA B. HAGEN, AMOS L. AND ANNE A. HAMUSEK, WILLIAM E. AND JUDITH C. JOHNSON, SHRIKANT G. AND SUHASINI S. JOSHI, NORMAN KATZ, SUZANNE L. HILL, MISAKI'S, INCORPORATED, RANDY A. AND SUEKO Y. NAKAYAMA, ABRAHAM S. AND MARY K. RAMOS, AKIRA AND SAEKO SATO, MICKEY R. AND NADINE A. SHINTAKU, HORACE J. AND WILLIE E. STARR, AND JAMES L. AND KATHRYN L. TARR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bakare v. Commissioner
Docket No. 9882-86
United States Tax Court
T.C. Memo 1994-72; 1994 Tax Ct. Memo LEXIS 71; 67 T.C.M. (CCH) 2234; February 23, 1994, Filed *71 An appropriate order denying petitioner's motion will be issued. Norman Katz, pro se. For respondent: Linette Angelastro. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case, originally involving 34 petitioners, is before the Court on petitioner Norman Katz' motion to be relieved of his stipulation of settlement filed with the Court on June 26, 1987. This case was part of a litigation project regarding a shelter entitled Midas International or "Uranium For Tax $ ". Petitioner, as well as many other investors, was represented by Attorney Gregory Alohawiwoole Altman (Altman). Nine docketed cases involving Midas International were selected by Altman and respondent as test cases and consolidated for trial. A stipulation of settlement was signed on petitioner's behalf by Altman and filed with the Court on June 26, 1987. In the stipulation of settlement, petitioner agreed to be bound by the results of the test case. By notice of deficiency dated January 30, 1986, respondent determined a deficiency in Federal income tax due from petitioner of $ 4,740, plus additions to tax under section 6653(a)(1) and (2). In the test case, , *72 affd. , we held that the Midas International transactions were utterly devoid of economic substance and must be ignored for Federal income tax purposes. As a result, we determined that the taxpayers therein were not entitled to deductions for mining development expenditures under the provisions of section 616 [1] or mining exploration costs under the provisions of section 617. We also sustained respondent's determinations as to the additions to tax under section 6653(a)(1) and (2) for negligence. Finally, we held that the taxpayers therein were liable for the increased interest under section 6621(c) with regard to underpayments attributable to disallowed deductions incurred in connection with the Midas International program for 1980 and 1981. The Court of Appeals for the Ninth Circuit affirmed our decision, stating: In a case such as this where the taxpayers have been found to have entered into sham transactions without primary profit motivation, they have failed to meet their burden of showing due care. No reasonably prudent person would have acted as they did. * * * [.]
*73 In petitioner's motion to set aside the stipulation of settlement, petitioner alleges that Altman was unable to render competent legal representation as he had been diagnosed as a manic depressive and was taking lithium to control his medical condition, but the medication had become ineffective due to a kidney infection. By order dated October 22, 1993, the Court, in considering petitioner's motion, ordered petitioner to file a supplement to his motion outlining (1) the issues which would be tried in the event his motion were granted, (2) the documents which he intended to offer in evidence, (3) the names and addresses of the witnesses which he intended to call, including a brief summary as to what they would testify to, and (4) a statement as to how his case differs from In petitioner's *74 supplement to his motion, he stated that he would be the sole witness and that his testimony would prove that he had the requisite profit motive, used due care, and was reasonably prudent. No additional relevant documentation was attached to petitioner's supplement. At the hearing on petitioner's motion, petitioner submitted a letter dated June 1, 1990, from Altman addressed to "Uranium For Tax $ " clients indicating that he has an adverse health condition stemming from a brain disorder which is life threatening, and, is, therefore, terminating his law practice. No additional documentation as to Altman's health was offered by petitioner nor was any additional relevant documentation offered to support any of petitioner's allegations of Altman's incompetence prior to June 1, 1990. However, petitioner did state that while in attendance at the trial of the test cases, he observed some disturbing signs in Altman's behavior. [2]
*75 As to the merits of the income tax case, petitioner urged the Court to trace the money invested in the program, and that such tracing would indicate that actual drilling was commenced, thereby proving that the project was not a sham. However, petitioner neither has any of the bank records nor has attempted to obtain them. At this late date, we believe that it is extremely unlikely that he would be able to obtain bank records dating back to 1980 and 1981. Moreover, we note that in Howard we found that there was no evidence to establish that Power Resources, Inc., the New Mexico drilling company which was hired as a contractor, ever received any of the $ 23 million allegedly obtained from purported option sales. We further found that the evidence indicated that only a fraction of the initial cash payments made by investors was actually expended by Power Resources for drilling on the mining claims involved in the Uranium For Tax Dollars program. Thus, the Court has already considered the cash flow and the extent of the drilling in reaching its conclusion that the investment was a sham. Accordingly, we are not convinced of any need to revisit this issue. With regard to the *76 additions to tax for negligence, petitioner contends that he relied upon the representations of Altman who allegedly visited the mining site, and that he, as a knowledgeable certified public accountant, had a bona fide profit-making objective. In , we stated, as follows: With the exception of Mr. Bambeck and Mr. Grosvenor, all of the petitioners were college graduates actively pursuing careers in, inter alia, medicine, dentistry, financial planning, insurance and banking. Mr. Bambeck has been a general constructor for some 25 years and Mr. Grosvenor has been a mason contractor for some 20 years. The petitioners, for the most part, displayed a marked indifference to the economic plausibility of the Uranium For Tax Dollars programs upon which they embarked in 1980 and 1981. * * * We find it inconceivable that any prudent individual would really believe that their agent, chosen by the promoter, could assuredly and routinely sell a uranium option to acquire each and every mining claims lease in the Uranium For Tax Dollars programs within seven days for $ 20,000 (in 1980) or $ 15,000 (in 1981), with the assurance *77 that the investor's check would be returned in the event a uranium option sale could not be arranged. Nor does it appear that any of the investors in the Uranium For Tax Dollars programs questioned the authenticity of the transaction which gave them a drilling expense deduction which included the full amount of their initial payment of $ 5,000 with no allowances whatever for fees or commissions normally paid to the seller of such packaged, tax-advantaged deals. In short, we deem it highly unlikely that any of the petitioners here involved actually believed that the transactions did in fact occur as heralded by the promoters. The commercial surrealism of these transactions should have alerted a reasonable person to the chimerical nature of the uranium mining venture in New Mexico. * * *
Rule 91(e) provides that a stipulation, to the extent of its terms, shall be treated as a conclusive admission by the parties to the stipulation. This Court will not permit a party to qualify, change, or contradict a stipulation, except where justice requires. We will enforce a settlement of stipulation, whether written or orally stipulated into the record, unless for reasons of justice a party *78 should be relieved from the stipulation. , affg. per curiam ; ; . We have also enforced stipulations to be bound where the parties have agreed to be bound by the outcome of a test case. , affg. ; ; . Here the stipulation was entered into fairly and freely by both parties and was entirely in accordance with their intentions. There is nothing in the record to indicate that Altman, in 1987, was not a competent attorney of record for petitioner. The stipulation of settlement to be bound by the results of Howard was beneficial to petitioner in that his case was not scheduled for trial and he was not required to put on extensive *79 proof of his case. It was not until several years had passed after the trial, the opinion of the Court was issued, and the Court's decision was affirmed on appeal and became final that petitioner decided to have the settlement set aside and to retry the entire case. We find no compelling circumstances that indicate an injustice is being done in upholding the stipulation of settlement, and, therefore, will not permit the stipulation of settlement to be set aside. Accordingly, we deny petitioner's motion to have the settlement stipulation set aside. An appropriate order denying petitioner's motion will be issued. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner, a certified public accountant who had advised many of his own clients to invest in the Uranium For Tax Dollars program, attended the trial as a consultant to Altman.↩